UNITED STATES DISTRICT COURT         FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

DEBORAH A. HARRIS,

                Plaintiff,                    MEMORANDUM
     -against-                              AND ORDER
                                                                                08-CV-3374 (JG)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                  Defendant.
-------------------------------------------------------x

A P P E A R A N C E S :

        BINDER AND BINDER, P.C.
               215 Park Avenue South, 6th Floor
               New York, NY 10003
        By:      Jeannine LaPlace
               *Attorneys for Plaintiff*

        BENTON J. CAMPBELL
               United States Attorney
               Eastern District of New York
               271 Cadman Plaza East
               Brooklyn, NY 11201
        By:      Kathleen A. Mahoney
               Assistant United States Attorney
               *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

         On September 14, 2005, plaintiff Deborah Harris filed an application for Social Security Disability Insurance Benefits and Supplemental Security Income Benefits. She alleged an inability to work, beginning in March 2002, due to frequent anxiety and panic attacks. Harris's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). Harris appeared without a representative at the June

26, 2007 hearing before ALJ Hazel C. Strauss.  On September 21, 2007, the ALJ concluded that Harris was not disabled within the meaning of the Social Security Act ("the Act") because, although she could not return to her past relevant work, she retained the residual functional capacity ("RFC") to perform "simple, repetitive, low stress type work, e.g., not fast paced, not on an assembly line and not dealing with the general public and in a low stress setting."  Tr. 17.  The Appeals Council denied Harris's request for review on July 18, 2008.  The adverse decision thus became the decision of the Commissioner of Social Security ("Commissioner").

Harris seeks review of that decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Based upon the record before the Commissioner, the parties have cross-moved for judgment on the pleadings.  I heard oral argument on January 16, 2008.

Because the ALJ failed to fully develop the record, I grant the plaintiff's cross-motion for judgment on the pleadings and deny defendant's motion.

## BACKGROUND

A.    *Harris's Medical History*

Harris was born on December 30, 1964.  She worked as a secretary, receptionist and office manager for various employers until January 2005.  In March 2002, Harris began to suffer from panic and anxiety attacks.  She claims that the attacks became progressively more severe, and finally caused her to leave her job in 2005.

Harris received psychotherapeutic counseling from Morna Barsky from May 1993 to January 2001, Tr. 64, but there is no indication that Barsky was contacted by either the Commissioner or Harris in reference to this proceeding.  Harris's next psychotherapist was Kyra Sposato, a registered nurse, who treated Harris from August 2001 to September 2003.  A

subpoena sent to Sposato by the ALJ was returned and marked "unable to forward." Tr. 201-203.[1] From November 11, 2004 to July 27, 2005, Harris had weekly psychotherapy sessions with Dr. Gail Cleveland. After being informed by Harris that Cleveland had retired and that she did not know her current address, the SSA made no further attempts to contact Cleveland. Tr. 81.[2]

On October 27, 2004, Harris began seeing Dr. Mark Gurtovy, a psychiatrist. Gurtovy diagnosed panic disorder with agoraphobia, and a Global Assessment of Functioning (GAF) score of 50, indicating a "serious" impairment to psychological functioning. Tr. 130. He recommended individual psychiatric therapy and increased Harris's doses of Xanax and Lexapro. Over the next eight months of treatment, Harris's complaints varied -- she sometimes asserted that she was feeling better, and sometimes reported that her anxiety and depression were increasing.

On May 16, 2005, Dr. Gurtovy submitted a report for the State Education Department's Office of Vocational and Educational Services for Individuals with Disabilities ("VESID"). In this report, Gurtovy repeated his diagnosis of panic disorder with agoraphobia, and stated that Harris "has been doing better" but was "still having episodes of anxiety and even panic attacks occasionally." Tr. 112. He estimated Harris's "[m]ental health" and "[w]ork ability" as "fair" (on an excellent/good/fair/poor scale), and when asked to describe her

---

[1] The Commissioner agrees that the subpoena to Sposato was returned and no further action was taken by the ALJ. Def. Mem. 3-4. The ALJ's statement at the hearing that "We do have records from Ms. Sposato pursuant to my subpoena," Tr. 240, is apparently a mistake.

[2] The Commissioner maintains that two subpoenas were sent to Dr. Cleveland, Def. Mem. 5, but it appears that the returned subpoena is simply reproduced twice in the record. Tr. 92, 201-03.

"Functional Limitations (response to pressure, supervision, working conditions, etc.)," he stated that Harris "needs to avoid stressful situations. Tr. 113.

Between June 2005 and April 2007, Gurtovy continued to treat Harris on a monthly basis. Harris occasionally reported that she felt okay, and sometimes indicated that her anxiety was increasing. Gurtovy consistently indicated that Harris was not suffering from poor memory or poor concentration. In addition to his anxiety and depression diagnoses, he diagnosed Harris with obsessive compulsive disorder and dysthymic disorder and prescribed Prozac for these conditions.

Dr. Arlene Rupp-Goolnick, a psychologist, examined Harris at the Commissioner's request on October 28, 2005. She opined that Harris was able to follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, make appropriate decisions and relate appropriately to others. Tr. 141. She also noted that Harris had a "varied" ability to maintain a regular schedule due to her anxiety and had difficulty performing complex tasks independently, and that the psychiatric problems she observed "may significantly interfere with [Harris's] ability to function on a daily basis." *Id.*

Finally, on December 8, 2005, non-examining physician Dr. P. Kudler conducted a written assessment. Kudler diagnosed Harris with an affective disorder and an anxiety-related disorder, and opined that Harris's ability to understand and remember detailed instructions, carry out detailed instructions, complete a normal workday and workweek without interruption from psychological symptoms, and accept instructions and respond to criticism from supervisors was "moderately limited." Tr. 157-58. Kudler indicated that Harris was "[n]ot significantly limited" with regard to the remaining abilities listed on the standard Mental Residual Functional

4

Capacity Assessment form, *id.*, and concluded that Harris "exhibits adequate coping, social and cognitive skills necessary to do simple repetitive tasks in a sustained fashion in a low stress setting." Tr. 159.

B.  *Hearing and Appeal*

Harris appeared *pro se* at the hearing. She testified that she had stopped working due to worsening panic attacks, and that she currently had three or four attacks each month. She also testified that she was currently seeing therapist Shirley Sillekens. Her "significant other," Charles Hall, testified that Harris cannot function socially "in a lot of cases" and could not concentrate "when her anxiety kicks in." Tr. 255.

Melissa Fass-Karlin testified by telephone as a vocational expert ("VE"). The ALJ asked her whether there were any jobs in the national economy which could be performed by a high-school-educated 42-year-old who could only perform "simple, routine, repetitive, low stress type work . . . for example, not fast paced, not on an assembly line, and not dealing with the general public." Tr. 260. Fass-Karlin stated that such an individual could work as an assembler of small products, a hand packager, or a cleaner.

On September 21, 2007, ALJ Strauss found that Harris's depression and panic disorder were "severe," but that she retained the RFC to perform simple, repetitive, low-stress work. Tr. 15-17. The ALJ found that this precluded Harris from performing her past relevant work but determined, based on the VE's testimony, that she could work as a small products assembler, a hand packager, or an industrial cleaner.

Following the ALJ's decision, Harris retained counsel and asked her current therapist, Shirley Sillekens, to provide an opinion as to the psychological limitations on Harris's

5

ability to perform in a normal work environment. Sillekens opined that Harris was "markedly limited" in her ability to understand and carry out detailed instructions, to complete a normal workweek without interruptions from her symptoms and to perform consistently without unreasonable rest periods. Tr. 214-16. She also believed that Harris was "moderately limited" in a number of other categories and estimated that her condition would require her to be absent from work, on average, more than three times a month. *Id.* When asked "[t]o what degree [Harris could] tolerate work stress," Sillekens indicated that she was "[i]ncapable of even 'low stress.'" Tr. 217. The questionnaire submitted by Sillikens was submitted to the Appeals Council, which concluded that it did not provide a basis for disturbing the ALJ's decision and denied Harris's request for review.

DISCUSSION

In order to be found eligible for disability benefits, Harris needed to prove before the Commissioner that, "by reason of [a] medically determined physical or mental impairment . . . . which has lasted . . . for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), she "is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).[3]

On review, the question presented is whether the ALJ's decision that Harris is not entitled to disability benefits is supported by substantial evidence in the record. 42 U.S.C. §

---

[3] Substantial work activity is defined as work that involves doing significant physical or mental activity. 20 C.F.R. § 404.1572. Work can be considered substantial even if it is done on a part-time basis or if less money is earned or less responsibility is associated with it than with previous employment. *Id.* Activities such as household tasks, hobbies, therapy, school attendance, club activities, or social programs are generally not considered to be substantial gainful activity. *Id.*

405(g); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam). However, in deciding whether the Commissioner's conclusions on the issue of disability are supported by substantial evidence, the reviewing court

> must first satisfy [itself] that the claimant has had a full hearing under the [Commissioner's] regulations and in accordance with the beneficent purposes of the Act. The need for this inquiry arises from the essentially non-adversarial nature of a benefits proceeding: the [Commissioner] is not represented, and the ALJ, unlike a judge in a trial, must himself affirmatively develop the record. Where, as here, the claimant is unrepresented by counsel [at the hearing], the ALJ is under a heightened duty to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. A reviewing court must determine whether the ALJ adequately protect(ed) the rights of (a) pro se litigant by ensuring that all of the relevant facts (are) sufficiently developed and considered.

*Echevarria v. Sec'y of Health and Human Servs.*, 685 F.2d 751, 755 (2d Cir. 1982).

Harris contends that ALJ Strauss breached her duty to adequately develop the record. She notes that Dr. Gurtovy, her treating physician, was never actually asked whether, in his medical opinion, Harris was able to work.[4] She argues that, had she been "represented by counsel, or properly assisted by the ALJ, Dr. Gurtovy would have received as a routine matter some type of Mental Residual Functional Capacity Assessment Form or Questionnaire which rates the plaintiff's capacity to perform twenty distinct mental components of typical work." Pl. Mem. 11. The Commissioner contends that ALJ Strauss had no duty to seek additional information from Gurtovy because she already had sufficient evidence to determine whether Harris was disabled. Def. Reply Mem. 5 (citing 20 C.F.R. §§ 404.1527(c) and 416.927(c)).

---

[4] Harris also argues that the ALJ breached her duty by failing to obtain the records of therapist Morna Barsky, who stopped treating Harris in January 2001, over a year before the alleged onset of her disability. I agree with the Commissioner that this argument overstates the ALJ's duty. Regulations require the Commissioner to develop the claimant's medical history "for at least the 12 months preceding the month" in which the application is filed, 20 C.F.R. § 404.1512(d), but Harris has failed to persuade me that the opinion of a therapist who last treated her over a year before the onset of her disability, and almost four years before she filed her claim, is "[o]bviously . . . extremely relevant" to that claim. Pl. Mem. 12.

7

The Commissioner's argument cannot be reconciled with the governing regulations. These regulations are not agnostic as to the source of the evidence needed to assemble an appropriate record; instead, they direct the SSA to seek the information it requires from the claimant's "own medical sources," and resort to consultative examinations only after "every reasonable effort" to obtain evidence from the claimant's sources has failed. 20 C.F.R. § 404.1512(d)(2). Even when the agency determines that a consult is required, the claimant's "treating source" is the "preferred source" of the consultation. 20 C.F.R. § 404.1519h.[5]

Thus, to the extent the Commissioner required the information provided by Drs. Rupp-Goolnick and Kudler to reach a conclusion regarding Harris's claim of disability, the regulations required that the ALJ first attempt to obtain this information from Dr. Gurtovy. *See Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000) (finding that ALJ had not satisfied its duty when it "relied on the opinions of non-treating, non-examining physicians" and opining that "the ALJ should have sought such an opinion from [claimaint's] treating physicians or, in the alternative, ordered consultative examinations" to assess RFC). There's no doubt that the ALJ's need for a Mental Residual Functional Capacity assessment was great; she explicitly accorded "significant weight" to the one provided by Kudler. Tr. 19. In fairness to Harris, and as required by the regulations, she should not have done so without first asking Gurtovy to provide one as well. However, there is no indication that she tried to do so, or determined that Gurtovy was unqualified or unwilling to supply such information.

---

[5] The full text of this regulation is as follows: "When in our judgment your treating source is qualified, equipped, and willing to perform the additional examination or tests for the fee schedule payment, and generally furnishes complete and timely reports, your treating source will be the preferred source to do the purchased examination. Even if only a supplemental test is required, your treating source is ordinarily the preferred source."

In essence, the Commissioner's argument is that any duty he may have had to seek the opinion of Harris's treating physician is now irrelevant, because the ALJ ultimately had sufficient evidence to support her finding. That argument is contrary to the spirit of the regulations, which not only provide that the agency must have substantial evidence for its findings, but also dictate how the agency must obtain that evidence. *See generally* 20 C.F.R. § 404.1512. Furthermore, the idea that the opinion of a physician the claimant has never met is an adequate substitute for the opinion of the claimant's trusted physician clashes with the "essentially non-adversarial nature of a benefits proceeding," *Echevarria*, 685 F.2d at 755, as well as the rule that a treating physician's opinions are generally favored and often dispositive. 20 C.F.R. § 404.1527 (d)(1)-(2) (opinion of treating physician generally given "more weight," and, in the proper circumstances, "controlling weight"). Accordingly, because the Commissioner failed to seek an opinion as to Harris's disability from her treating physician before relying on the opinions of non-treating and non-examining sources, the record was improperly developed and Harris did not receive "a fair and adequate hearing before the [Commissioner]."[6] *Echevarria*, 685 F.2d 751, 755.

On remand, the ALJ should revisit the adverse credibility determination with closer attention to the record. Harris was found to have "a greater degree of functioning than alleged" based in part on the finding that she "prepares food and cooks." Tr. 18. But Harris said

---

[6] Also, Harris reported at the hearing that she was currently receiving treatment from therapist Shirley Sillekens. Tr. 238. The ALJ failed to obtain records or an assessment from Sillekens. The Commissioner's contention that Sillekens, a social worker, was not "an acceptable source" for the purposes of the treating physician rule, *see* Def. Mem. 24 (citing *Diaz v. Shalala*, 59 F.3d 307, 312-14 (2d Cir. 1995)), conflates that rule and the duty to develop the record. The mere fact that the ALJ would not have been required to accord controlling weight to Sillekens's opinion does not mean she was entitled to disregard Sillekens altogether. To the contrary, she should review the records and exercise her "discretion to determine the appropriate weight to accord [the non-medical] opinion based on all the evidence." *Diaz*, 59 F.3d at 314.

9

in writing that she prepares food only "monthly," Tr. 75, and testified at the hearing that her significant other "does most of the cooking," and that she really "no longer cook[s]." Tr. 247. Similarly, the ALJ wrote that Harris "visits with friends," Tr. 18, whereas Harris stated in writing that her "Social Activities" are limited to a monthly outing with her significant other and testified that she has no friends. Tr. 78, 249. Though it is true that the ALJ's determination was also based on other activities for which there is record support, a judge's finding that a witness testified falsely is no minor matter, and it should be made only after a meticulous review of the testimony and the record as a whole. There is reason to believe such a review was lacking here.[7]

## CONCLUSION

For the reasons set forth above, plaintiff's cross-motion for judgment on the pleadings is granted and defendant's motion is denied. The matter is remanded to the Commissioner for further appropriate proceedings.

So ordered.

John Gleeson, U.S.D.J.

Dated: January 20, 2008
      Brooklyn, New York

---

[7] I am not persuaded by the Commissioner's contention at oral argument regarding the finding that Harris visits with friends. The Commissioner contended that the ALJ could have rejected Harris's repeated assertions because of a statement buried in Dr. Rupp-Goolnick's report that Harris visits friends. Even putting aside the staleness of that statement (in a report written 21 months before the hearing), if the ALJ in fact relied on it, she should have addressed explicitly why it justified rejecting as false Harris's repeated and consistent statements to the contrary.